**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| REBECCA ZORSCH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 6:17-CV-03238-DGK-SSA |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AFFIRMING THE COMMISSIONER'S DECISION

Plaintiff Rebecca Zorsch ("Plaintiff") petitions for review of an adverse decision by Defendant, the Acting Commissioner of Social Security ("Commissioner"). Plaintiff applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. The Administrative Law Judge ("ALJ") found Plaintiff had severe impairments of occipital neuralgia, cervicalgia, migraine headaches, Hashimoto's thyroiditis, obesity, fibromyalgia, and Chiari malformation, but retained the residual functional capacity ("RFC") to perform her past relevant work as an employment and claims aid, or alternatively, a marker.

After carefully reviewing the record and the parties' arguments, the Court finds the ALJ's decision is supported by substantial evidence. The Commissioner's decision is AFFIRMED.

### Procedural and Factual Background

The complete facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

Plaintiff filed her application on June 27, 2014, alleging a disability onset date of June 11, 2014. The Commissioner denied the application at the initial claim level, and Plaintiff appealed the denial to an ALJ. The ALJ held a hearing, and on May 31, 2016, found Plaintiff was not

disabled. The Appeals Council denied Plaintiff's request for a review, leaving the ALJ's decision as the final decision. Plaintiff has exhausted all administrative remedies and judicial review is now appropriate under 42 U.S.C. § 405(g).

## Standard of Review

A federal court's review of the Commissioner's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Id.* The court must "defer heavily" to the Commissioner's findings and conclusions. *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015). The court may reverse the Commissioner's decision only if it falls outside of the available zone of choice, and a decision is not outside this zone simply because the evidence also points to an alternate outcome. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011).

## Discussion

The Commissioner follows a five-step sequential evaluation process[1] to determine whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a

---

[1] "The five-step sequence involves determining whether (1) a claimant's work activity, if any, amounts to substantial gainful activity; (2) his impairments, alone or combined, are medically severe; (3) his severe impairments meet or medically equal a listed impairment; (4) his residual functional capacity precludes his past relevant work; and (5) his residual functional capacity permits an adjustment to any other work. The evaluation process ends if a determination of disabled or not disabled can be made at any step." *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632 n.1 (8th Cir. 2014); *see* 20 C.F.R. § 404.1520(a)–(g). Through Step Four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches Step Five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009).

medically determinable impairment that has lasted or can be expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A).

Plaintiff argues the ALJ erred by:  (1) discounting a portion of Stephen Holmes's M.D. ("Dr. Holmes") opinion; (2) failing to provide a narrative statement explaining why he omitted limitations due to Plaintiff's headaches; and (3) failing to fully develop the record.  After reviewing the record and the applicable law, the Court finds these arguments are without merit.

## I.     The ALJ properly weighed the medical evidence.

First, Plaintiff complains that the ALJ incorrectly discounted a portion of her treating physician, Dr. Holmes's opinion.

An ALJ "may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Medhaug v. Astrue*, 578 F.3d 805, 815 (8th Cir. 2009).  Physician opinions that are internally inconsistent are entitled to less deference than they would otherwise receive.  *Guilliams v. Barnhart*, 393 F.3d 798, 803 (8th Cir. 2005).  Further, an ALJ is entitled to give less weight to a physician's opinion when it is based largely on the patient's subjective complaints rather than objective medical evidence.  *Renstrom v. Astrue*, 680 F.3d 1057, 1064 (8th Cir. 2012).

Here, Dr. Holmes signed a statement of limitations drafted by Plaintiff indicating she is unable to perform the following job duties:

> . . . work at a computer or any clerical or physical task, due to extreme head/skull and neck pain, vertigo and nausea.
>
> Unable to perform phone duties, due to extreme coughing and constant headaches, severe ringing in the ears, pain in jaw/face and head bones.  Also hearing is hypertensive [sic] to phone noise and voices cannot be tolerated.

Unable to sit at a desk; due to need to sleep many times throughout the day because of extreme chronic fatigue and muscle/skull pain.

Unable to tolerate office environment, unable to focus and can no longer perform any duties requiring concentration. Severe problems in communication with coworkers and clients due to inability to see correctly with vision problems, diploplia [double vision] and vertigo. Also affecting stability in walking and cannot tolerate elevation changes sitting to standing and unable to stoop, twist or bend.

Unable to tolerate office environment due to being off balance. Cannot walk without often becoming off balance and falls easily. These symptoms have created anxiety and depression.

Only able to perform minimal cognitive function an[d] is unable to drive.

R. at 367. The ALJ afforded that opinion little weight because it was drafted by Plaintiff and merely signed by Dr. Holmes, it was inconsistent with the evidence in the record, and it was inconsistent with other clinical findings.

The ALJ's decision to discount Dr. Holmes's opinion in the signed statement of limitations is supported by the record. The record indicates Plaintiff has normal vision, normal gait and station, normal concentration, memory, and attention, and occasionally drives. R. at 48, 367, 375, 434, 444, 451, 471, 497, 502, 509. The record also supports a finding that Plaintiff experienced some relief from treatment for her headaches. R. at 451. Further, the other statements about chronic fatigue are not supported by the record evidence other than Plaintiff's own statements. Additionally, the ALJ considered Plaintiff's jaw pain and found there was no evidence of work-related limitations. R. at 13. The ALJ also considered Plaintiff's depression and found it did not cause more than a minimal limitation. *Id.* Accordingly, the ALJ did not err in discounting this portion of Dr. Holmes's opinion. *See Papesh v. Colvin*, 786 F.3d 1126, 1132 (8th Cir. 2015)

(holding that a treating physician's opinion "may have limited weight if it provides conclusory statements only, or is inconsistent with the record") (internal quotation marks and citation omitted).

## II.     The ALJ provided a narrative statement linking the evidence to the RFC.

Next, Plaintiff argues the ALJ erred because he failed to provide a narrative statement linking the evidence to the RFC because he did not explain how the limitations took into account Plaintiff's migraines and occipital neuralgia.

Social Security Ruling 96-8p requires an ALJ to consider all relevant evidence, and then explain how the evidence supports his conclusions in a narrative description. SSR 96-8p, 1996 WL 374184 (July 2, 1996). However, "the ALJ need not follow each RFC limitation with a list of the specific evidence on which the ALJ relied." *Bradley v. Colvin*, No. 3:14-05052-DGK-SSA, 2015 WL 2365607, at *3 (W.D. Mo. May 18, 2015).

Here, the ALJ discussed how he formulated Plaintiff's RFC including making credibility findings and discussing the medical opinions in the record. R. at 15-20. Further, the ALJ considered Plaintiff's subjective complaints of disabling pain and inability to work due to her migraines and occipital neuralgia along with the generally normal clinical findings, her reports of relief from treatment, her activities of daily living, and the medical opinions in the record. This detailed analysis supports the ALJ's conclusion that Plaintiff could perform light work with the identified limitations.

## III.     The ALJ did not need to further develop the record.

Lastly, Plaintiff argues the ALJ erred because he did not fully develop the record because she was sent to an internal medicine doctor instead of a headache specialist and the ALJ did not hold a supplemental hearing.

The ALJ has a duty to further develop the record by obtaining a consultative opinion only when "the medical records presented do not give him sufficient medical evidence to determine whether the claimant is disabled." *Martise v. Astrue*, 641 F.3d 909, 926-27 (8th Cir. 2011).

At the end of Plaintiff's hearing the ALJ stated:

> I've also decided I'm going to send you out for a neurological examination. . . . I'm going to specifically request, I don't always get what I want, but I'm going to specifically request a[n] expert in headaches. There is a neurologist that I've used in the past down in Texas, I don't know if he'll be available or not, or some other doctor. I frankly don't care which if they can give me the expertise that I'm looking for. But I want to make sure that we have someone take a look at that. We may not be able to because of the distance and stuff, but anyhow we're going to ask for it. We'll see what I get. Once I get the new evidence in, . . . I'm either going to issue a decision . . . . We may have a supplemental hearing. We could have a supplemental hearing with an actual ME present to go through the evidence with us. I can't really tell you what I'm going to because I don't know what the evidence is going to show me.

R. at 57-58. The ALJ did not err. The ALJ recognized he needed additional information regarding Plaintiff's headaches and sent her to a doctor for an evaluation. The ALJ stated that while he preferred a particular type of doctor, ultimately the specialty didn't matter as long as the doctor had the right expertise. Based on these facts, the ALJ was not required to develop the record further.

## Conclusion

For the reasons discussed above, the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Date:   July 20, 2018            /s/ Greg Kays                         
                                GREG KAYS, CHIEF JUDGE
                                UNITED STATES DISTRICT COURT